IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






WR-48,694-02/03






EX PARTE ROBERT JAMES NEVILLE, JR.








ON APPLICATION FOR WRIT OF HABEAS CORPUS


AND WRIT OF MANDAMUS


IN CAUSE NO. 0685474 FROM THE


371
ST DISTRICT COURT OF TARRANT COUNTY







 Cochran, J., filed a statement concurring in the dismissal of the writ and denial
of a stay of execution, in which Johnson and Keasler, JJ., joined.



 In this subsequent writ application, (1) filed pursuant to Article 11.071, § 5, of the Texas
Code of Criminal Procedure, applicant presents a claim of mental retardation under Atkins
v. Virginia. (2) I join in the Court's Order dismissing applicant's subsequent writ application 
because he has failed to make a prima facie showing that he is, in fact, mentally retarded.

 In Atkins, the Supreme Court stated that any "serious disagreement about the
execution of mentally retarded offenders, is in determining which offenders are in fact
retarded." (3) Thus, the Supreme Court left it to the individual states to develop appropriate
standards, definitions, and procedures to determine which offenders are so mentally
impaired that their execution is barred by the Eighth Amendment to the United States
Constitution. (4) Because the Texas Legislature has not yet enacted a statutory basis for
implementing Atkins, this court provided interim guidelines in Ex parte Briseno. (5)

 Under the guidelines set out in Briseno, a person is considered mentally retarded
under Texas law if he has these three characteristics: (1) significantly subaverage general
intellectual functioning, an IQ of about 70 or below; (2) related limitations in adaptive
functioning; and (3) onset of the above two characteristics before age eighteen. (6)

 Applicant has failed to make a prima facie showing on any of these three prongs. He
asserts that, to the best of his knowledge, he has never had an I.Q. test. Instead, he points
to evidence from his trial that he suffers from a blood disease known as systemic lupus
erythematosus (lupus) which is similar to cancer or AIDS. Lupus is an autoimmune disease
which can attack multiple organs, including the brain. It may cause those who are affected
by lupus to behave irrationally, erratically, and emotionally. Lupus, according to the defense
expert who testified at applicant's trial, is not curable, but it is treatable. The expert also
stated that applicant suffers from a mental illness called "lupus-induced bipolar disorder"
which resulted in "pseudopsychopathic syndrome." But this evidence, though it may
explain applicant's irrationality, erratic behavior, and emotional outbursts, does not show
that lupus causes mental retardation or that there is any necessary scientific correlation
between lupus and significantly subaverage intellectual functioning. 

 The second prong of a mental-retardation claim requires an analysis of the person's
adaptive behavior. Some people whose IQs fall at or below the general range of mental
retardation are nonetheless able to function well (although perhaps by pursuing a career in
criminality), while others whose IQs fall at or above the general range of mental retardation
are wholly unable to function in society. In Briseno, this Court set out a list of seven non-exclusive factors which courts might consider when evaluating this second prong of mental
retardation. (7)

 Relevant to this second adaptive-behavior prong, applicant's counsel has submitted
an affidavit with this subsequent application in which he states:

 [Applicant] consistently acted inappropriately in making decisions. He
waived his direct appeal in open court. I was so angry that I called [applicant]
a goddamn fool on the record. At that time, I thought [applicant] was an
absolute idiot. In addition, against my wishes, [applicant] did a videotape
interview with [a prosecutor] of the Tarrant County District Attorney's
Office. I told [applicant] not to do the interview; however, he was hellbent
to grant the interview. As a result, I believe that the Tarrant County District
Attorney's Office probably has a copy of the interview in their possession. 
Again, I thought [applicant] was 2x an idiot.

 

 I am not in a position to decide whether [applicant] is mentally
retarded. All I can honestly say is that he acted in a fashion that I
characterized as stupid given the context of his decisions. Stupid plus other
factors may indicate mental retardation. However, I am not a mental health
professional and can make no medical or psychological claim about
[applicant's] mental status.


Although a client might be unwise to ignore or reject his attorney's legal advice, that
rejection is not prima facie evidence of his mental retardation. "Stupid" in such a context
may relate to the wisdom of the decision made, not to the client's mental inability to make
decisions. We cannot conclude from his attorney's affidavit that applicant's "stupid"
decisions concerning legal proceedings were caused by or connected to mental retardation
generally or limitations in adaptive behavior in particular. 

 Another of applicant's attorneys has filed an affidavit stating that applicant's
execution should be postponed because applicant has not had his I.Q. tested and he could
be mentally retarded. This puts the cart before the horse. An inmate must make a prima
facie showing of mental retardation before he is entitled to a stay of execution and further
evidentiary development of that claim. The reverse is not true: an inmate is not entitled to
a stay of execution simply because he does not have evidence of an IQ test. Applicant's
second attorney states that applicant "exhibits some of the same traits and characteristics as
those exhibited by other clients who have been found to be mentally retarded." But what
are the relevant traits and characteristics that applicant displays and what evidence shows
that these traits, characteristics and behavior are caused by mental retardation? 

 Finally, applicant has failed to make any showing that the onset of any purported
mental impairment or adaptive functioning deficiency (as opposed to an inherited physical
disease such as lupus) occurred before age eighteen. 

 Because applicant has failed to make a prima facie showing of mental retardation,
I join in the Court's Order dismissing applicant's subsequent writ application under article
11.071, §5, of the Texas Code of Criminal Procedure.


Cochran, J.

Filed: February 6, 2006

Do Not Publish
1. Applicant's execution is scheduled for February 8, 2006. This subsequent writ
application was filed on January 31, 2006. 
2. 536 U.S. 304 (2002).
3. Id. at 317.
4. Id.
5. 135 S.W.3d 1 (Tex. Crim. App. 2004).
6. Id. at 7-8; see also Hall v. State, 160 S.W.3d 24, 36 (Tex. Crim. App. 2004), cert.
denied, 2005 U.S. LEXIS 5073 (U.S. June 27, 2005).
7. Id. at 8-9. The factors set out in Briseno were as follows: 

 * Did those who knew the person best during the developmental stage-his family,
friends, teachers, employers, authorities-think he was mentally retarded at that
time, and, if so, act in accordance with that determination?

 * Has the person formulated plans and carried them through or is his conduct
impulsive?

 * Does his conduct show leadership or does it show that he is led around by others?

 * Is his conduct in response to external stimuli rational and appropriate, regardless
of whether it is socially acceptable?

 * Does he respond coherently, rationally, and on point to oral or written questions or
do his responses wander from subject to subject?

 * Can the person hide facts or lie effectively in his own or others' interests?

 * Putting aside any heinousness or gruesomeness surrounding the capital offense,
did the commission of that offense require forethought, planning, and complex
execution of purpose?

Id.